IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:22-cv-1223 (RDA/WEF) |
| ACCREDITATION ALLIANCE OF CAREER SCHOOLS AND COLLEGES, D/B/A ACCREDITING COMMISSION OF CAREER SCHOOLS AND COLLEGES, | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Partial Motion to Dismiss.  Dkt. 14. This Court has dispensed with oral argument as it would not aid in the decisional process.  Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter has been fully briefed and is now ripe for disposition.  Having considered Defendant's Partial Motion to Dismiss and Supporting Memorandum (Dkt. Nos. 14; 15), together with Plaintiff's Opposition (Dkt. 21) and Defendant's Reply (Dkt. 22), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the following reasons.

# I. BACKGROUND

## A. Factual Background[1]

### 1. Accreditation Procedures

An institution must be accredited to participate in federal assistance programs authorized under Title IV of the Higher Education Act ("HEA"). Dkt. 1 ¶ 15. The federal government does not directly accredit institutions of higher learning, but rather delegates that authority to various federally approved accrediting agencies for different types of educational institutions. *Id.* ¶ 15; *Career Care Inst., Inc. v. Accrediting Bureau of Health Educ. Sch., Inc.*, No. 1:08CV1186 AJT/JFA, 2009 WL 742532, at *1 (E.D. Va. Mar. 18, 2009). Accreditors set the standards for accreditation but must comply with various other standards set forth by the HEA and Department of Education. *Id.* ¶¶ 16-17; *Career Care Inst.*, 2009 WL 742532, at *1. In particular,

> accrediting agencies must afford certain due process protections to each educational institution it accredits which include, among other things, providing written statements of agency requirements and standards, written notice of any "adverse accrediting action or action to place the institution or program on probation or show cause," and an opportunity to appeal any adverse action prior to the action becoming final. 20 U.S.C. § 1099b(a)(6); 34 C.F.R. § 602.25.

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 7 (D.D.C. 2018), *aff'd sub nom.* 788 F. App'x 5 (D.C. Cir. 2019); Dkt. Nos. 1 ¶ 21; 15 at 16. If the accreditor's internal Appeals Panel affirms the initial decision, the decision is final, and the institution's only recourse is binding arbitration. Dkt. 1 ¶ 25.

---

[1] For purposes of considering the instant Motion, the Court accepts as true all facts contained within Plaintiff's Complaint as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2. Withdrawal of Plaintiff's Accreditation

Plaintiff Center for Excellence in Higher Education, Inc. ("CEHE") ("Plaintiff") owns and operates four institutions of higher education. *Id.* ¶ 7. Independence University ("IU"), an online school, was the only one of CEHE's four institutions that was enrolling students at the time of the withdrawal of accreditation. *Id.* ¶ 8. Defendant Accreditation Alliance of Career Schools and Colleges ("Defendant") is a federally recognized accrediting agency, that was responsible for approving IU's accreditation. *Id.* ¶ 15. Defendant's *Standards for Accreditation* ("*Standards*") lay out the requirements that institutions must maintain to receive accreditation. *Id.* ¶ 4.

In September of 2018, Defendant determined that IU was out of compliance with the student achievement *Standards* because of its low graduation and employment rates. *Id.* ¶ 32. Accordingly, Defendant placed IU on probation. *Id.* Defendant allows an institution a maximum of three years to remedy noncompliance with any *Standard*, however, it may extend that maximum if good cause exists. *Id.* ¶ 30.

Plaintiff spent roughly $10 million on initiatives that would improve student achievement. *Id.* ¶ 35. During this two-year probationary period, Plaintiff consistently updated Defendant on its initiatives and Defendant commended those efforts. *Id.*

On July 21, 2020, Defendant issued a continued probation letter that recognized Plaintiff's progress in improving student achievement and announced that good cause existed to extend IU's accreditation until at least May 2021. *Id.* ¶ 35. In this letter, Defendant also acknowledged that IU's programs could not report benchmark graduation rates for several years because the school primarily offers 20- to 36-month degree programs. *Id.* ¶¶ 31, 35. Defendant further stated that it would measure progress on the success of recently enrolled students, since they are the students that would be affected by Plaintiff's new initiatives. *Id.*

On August 21, 2020, a Colorado state court ruled that Plaintiff's use of Bureau of Labor Statistics ("BLS") salary and job outlook information advertisements for another of CEHE's institutions, CollegeAmerica (which had been approved by Defendant) violated state consumer protection laws. *Id.* ¶ 5. A few months after that ruling, Defendant's own application for continued federal recognition was up for review by the Department of Education. *Id.* According to Plaintiff, the Colorado state court ruling is the event that triggered Defendant's disparate treatment toward IU. *Id.*

On December 20, 2020, Plaintiff sent Defendant a follow-up letter which contained updated projections for IU's recently enrolled students showing that all programs were on track to meet or exceed benchmark rates. *Id.* ¶ 36. During a meeting in February 2021, Defendant withdrew IU's accreditation before IU's probation was set to end in May. *Id.* ¶ 37. The withdrawal caused Plaintiff to lose access to critical Title IV funding and to lose the ability to continue enrolling students, and also led to the closure of Plaintiff's schools. *Id.* ¶ 1. Defendant published the decision to withdraw IU's accreditation on April 22, 2021 and stated that it based the decision on the graduation rates of old students, not new students. *Id.* ¶ 37. This decision was also announced around the time that Defendant stated that it would ease its strict enforcement of the student achievement *Standards* due to the Covid-19 pandemic. *Id.* ¶ 43.

Plaintiff alleges that Defendant treated other member institutions, who were in worse or similar conditions to IU, more leniently. *Id.* ¶ 51. On April 30, 2021, Plaintiff sent a letter to Defendant's Executive Director, Dr. Michale McComis, notifying him that publicly available information alerted them to this unfair treatment. *Id.* Plaintiff then turned to Defendant's internal Appeals Panel, which is required to overturn any decision that is arbitrary and capricious according to Defendant's *Rules of Process and Procedure*. *Id.* ¶ 52. Plaintiff requested the records of

Defendant's treatment of other member institutions, particularly regarding any leniency given to those schools because the schools were online or because of the pandemic. *Id.* ¶ 51.

Dr. McComis denied Plaintiff's record requests, which according to Plaintiff, meant that the evidence of disparate treatment and bad faith were not considered in Defendant's internal appeals process. *Id.* ¶¶ 53, 6. Plaintiff then initiated arbitration, and the arbitrator also concluded that he could not rely on that alleged evidence of disparate treatment and bad faith. The arbitrator stated that he was "constrained by the *Instructions for Arbitration* to decline [Plaintiff's] requests that the Commission be ordered to produce documents that were not in the record before the Appeals Panel or that discovery be permitted in arbitration." *Id.* ¶ 26. Consequently, the arbitrator entered an award in favor of Defendant. *Id.* ¶ 63.

### B. Procedural Background

Plaintiff initiated suit in this Court by filing a Motion to Vacate Arbitration Award and Complaint on October 28, 2022. Dkt. 1. In turn, Defendant filed a Partial Motion to Dismiss along with a Memorandum in Support on December 22, 2022. Dkt. Nos. 14; 15. Plaintiff responded by filing an Opposition on January 26, 2023. Dkt. 21. Thereafter, Defendant filed a Reply on February 9, 2023. Dkt. 22.

### II. Standard of Review

Federal Rules of Civil Procedure 12(b)(6) provides for the dismissal of an action if the Court determines that a complaint did not set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

5

In considering a motion to dismiss, a court "must accept as true all the factual allegations contained in the complaint," drawing "all reasonable inferences" in favor of a plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). Moreover, a court must determine whether the factual allegations contained in a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545. This means that a plaintiff is obligated to provide more than just conclusory allegations that are merely "a formulaic recitation of a cause of action's elements." *Id.* Accordingly, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

In general, a court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). However, a court may consider any exhibits attached to a complaint that are incorporated therein by reference. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Id.*

## III. Analysis

In its Motion to Vacate Arbitration Award and Complaint, Plaintiff seeks an order vacating the August 4, 2022 arbitration award that was entered in favor of Defendant. Plaintiff also brings five claims against Defendant: a violation of due process claim (Count I), a claim for declaratory judgment (Count II), two tortious interference with contract claims (Count III and IV), and a tortious interference with prospective business or economic advantage claim (Count V). Dkt. 1 at

24-30. Defendant now seeks dismissal of Counts II through V for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendant asserts that Plaintiff's state law claims are preempted by the HEA, but, in the alternative, asks the Court to conduct a choice-of-law analysis and to determine that Plaintiff has failed to allege sufficient facts for causation under Utah law. Dkt. 15 at 18, 24-25. The Court will address each argument in turn.

### A. Declaratory Judgment (Count II)

Defendant argues that the declaratory judgment claim serves no useful purpose and should be dismissed because the issue will be fully decided through the adjudication of Count I. Dkt. 15 at 6-7. Dkt. 15 at 7-8; 20 U.S.C. § 1099b(f). In its Opposition, Plaintiff avers that its declaratory judgment claim should not be dismissed because declaratory judgment would provide Plaintiff protections from potential liabilities that may be imposed by the Department of Education. Dkt. 21 at 19. In addition, Plaintiff argues that declaratory judgment may help other institutions of higher education understand their rights regarding accreditation actions. *Id.*

The Court may dismiss a declaratory judgment claim that "is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." *A.Hak Indus. Servs. BV v. TechCorr USA, LLC*, No. 3:11-CV-74, 2014 WL 7243191, at *27 (N.D. W. Va. Dec. 19, 2014) (quoting *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). Put simply, declaratory judgment is improper where the legal issues will be resolved through the litigation of a different claim.

Plaintiff requests "a judgment declaring that Defendant's acts violated Plaintiff's *due process rights*." Dkt. 1 ¶ 84 (emphasis added). However, this matter will be fully resolved through the litigation of Plaintiff's due process claim. Accordingly, if Plaintiff were to prevail on both the declaratory judgment and due process claims, Plaintiff's relief would be purely duplicative.

Plaintiff cites *Perdido Sun Ass'n v. Nationwide Mut. Ins. Co.* to argue that the declaratory judgment claim cannot be dismissed if "possible future events" could be settled by the judgment. No. 3:06cv318/MCR, 2007 WL 2565990, at *4 (N.D. Fla. Aug. 30, 2007); Dkt. 21 at 19. Critically, in *Perdido Sun Ass'n*, both claims did not generate the same relief. The court in *Perdido Sun Ass'n* explicitly stated that "the court accepts that the declaratory relief sought in Count II, if granted, would afford Perdido Sun more relief than it would receive by simply prevailing on [Count I]." *Perdido Sun Ass'n*, 2007 WL 2565990, at *4. The plaintiff's claim for declaratory judgment in *Perdido Sun Ass'n* survived because additional relief was available, not due to the existence of possible future events. *Id.* Plaintiff has not explained how the declaratory judgment claim, if granted, would generate different relief than the due process claim.

Plaintiff also relies on *Rosado v. eBay, Inc.* to argue that its declaratory judgment claim should not be dismissed because the claim "may act to remove future uncertainty and controversy as to the rights of other [institutions seeking review of accreditation actions]." 53 F. Supp. 3d 1256, 1268 (N.D. Cal. 2014); Dkt. 21 at 19. Plaintiff cites no cases within the Fourth Circuit that support the *Rosado* Court's decision to deny a motion to dismiss for a duplicated declaratory judgment claim. The Fourth Circuit has been exceedingly clear "that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). The Court declines to adopt the *Rosado* Court's analysis, in favor of the Fourth Circuit's established precedent. Plaintiff's declaratory judgment claim does not serve a sufficiently useful

purpose to survive a motion to dismiss; accordingly, the motion to dismiss will be granted in this regard and Count II will be dismissed.

### B. State Law Tort Claims

#### 1. Preemption

Next, Defendant asks this Court to "find that Plaintiff's state law tort claims arising from the withdrawal of accreditation are preempted by the HEA under the doctrine of obstacle preemption." Dkt. 15 at 13. Defendant argues that the ability of constituent institutions to add state law claims could needlessly increase the cost of enforcing accreditation standards without benefiting schools. *Id.* at 14. Additionally, Defendant asserts that increased litigation costs are contrary to the Department of Education's stated purpose of the HEA. *Id.* at 13. Plaintiff, in response, argues the following: (1) that the plain text of the HEA acknowledges the right of an institution to bring tort claims (2) that other courts have held that the HEA does not preempt state tort claims, and (3) that tort claims do not conflict with a "clear and manifest" Congressional policy. Dkt. 21 at 9, 10, 12. In support of its position, Plaintiff highlights that the majority of courts have uniformly held that that the HEA does not preempt state law claims. *Id.* at 10.

Defendant has a high burden to establish that the HEA preempts state tort law claims. To begin, the Supremacy Clause requires that federal law and the Constitution take precedence over any conflicting state laws. U.S. Const. art. VI, cl. 2. The "taxonomy of preemption yields four fundamental varieties: express preemption, field preemption, impossibility preemption, and obstacle preemption." *Oakley v. Coast Pro., Inc.*, 570 F. Supp. 3d 365, 372 (S.D. W. Va. 2021) (quoting Gregory M. Dickinson, *Calibrating Chevron for Preemption*, 63 Admin. L. Rev. 667, 672 (2011)). Obstacle preemption applies "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Columbia*

*Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 829-30 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

When faced with a similar question, the Fourth Circuit and district courts within the Fourth Circuit have declined to analyze preemption when the question may be mooted based on the outcome of the plaintiff's other claims. *See Prof'l Massage v. Accreditation All. Of Career Sch. & Colleges,* 781 F.3d 161, 180, n. 3 (4th Cir. 2015) (declining to address whether the HEA preempted state tort law claims where the state law claims were meritless); *see also Mountain State University, Inc. v. The Higher Learning Commission*, No.5:14-16682, 2016 WL 626563, at *2 (S.D. W.V. Feb. 16, 2016) (finding it unnecessary to address the matter of preemption at the motion-to-dismiss stage where plaintiff's due process claim would resolve the tortious interference claims). In *Mountain State University*, a plaintiff institution similarly asserted, *inter alia*, a due process and tortious interference claim against a defendant accrediting agency. *Id.* at *1. The *Mountain State University* Court reasoned that if the plaintiff failed to prevail on the due process claim, then surely the defendant would have shown that any interference was proper, and the tortious interference claim will likewise fail. *Id.* at *3. The same is true in this case. If Defendant prevails on the due process claim, then Defendant will likewise prevail on the tortious interference claim. Further, there exists a "fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Mountain State Univ., Inc. v. Higher Learning Comm'n,* No. CV 5:14-16682, 2017 WL 963043, at *16 (S.D. W. Va. Mar. 10, 2017) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (internal citations and quotation marks omitted)). The Supreme Court has, even through its dissenting opinions, repeatedly reaffirmed the "principle that constitutional

issues are too important to be decided save when absolutely necessary, and are to be avoided if there are grounds for decision of lesser dimension." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 509 (1975) (Rehnquist, J., dissenting).  Thus, the Court presently declines to address Defendant's preemption argument at the motion-to-dismiss stage.[2]  It is possible that after discovery, when the factual record becomes clearer, Defendant may prevail on the due process claim, which would render answering the preemption question unnecessary. *See Estes v. ECMC Grp., Inc.*, 565 F. Supp. 3d 289, 302 (D.N.H. 2021) ("After discovery, the factual record will be clearer, and the parties may raise any remaining preemption issues at summary judgment.").  Defendant may, however, renew its preemption argument via a summary judgment motion.  Thus, the Motion to Dismiss will be denied in this respect.

2. Choice of Law

The parties disagree as to the choice of law analysis and its relevance to the present Motion to Dismiss.  Defendant contends that Utah law should apply to all three tortious interference claims because the "last event necessary" to cause legal injury for each claim occurred in Utah. Dkt. 15 at 18.  Plaintiff argues that it is premature to decide choice of law issues on Defendant's Motion to Dismiss, because resolving the motion does not "turn on a choice of law analysis" and that this Court "should defer ruling on such matters until the parties have developed the factual evidence in

---

[2] Although the Fourth Circuit declined to answer the preemption question, it did indicate that a "serious question of cognizability exist[ed]" with respect to levying state law claims to challenge an accreditation decision. *Prof'l Massage v. Accreditation All. Of Career Sch. & Colleges*, 781 F.3d at 180.  The Court also notes that the Seventh Circuit has held that federal law, not state law should govern accreditation disputes and that one court within the Circuit has held the Seventh Circuit's position has merit. *Mountain State University, Inc. v. The Higher Learning Commission*, No.5:14-16682, 2016 WL 626563, at *2 (S.D. W.Va. Feb. 16, 2016). Therefore, this Court does not foreclose the possibility that the HEA may preempt state law claims.

11

support of their respective positions." Dkt. 21 at 14 (citing *Redstone Int'l, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 5:18-CV-175, 2020 WL 13580530, at *7-8 (N.D. W. Va. Nov. 2, 2020).

In deciding which substantive law to apply, the state law of the forum state governs. 28 U.S.C. § 1652; *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). As this Court sits in Virginia, Virginia's choice of law rules apply. For tort claims, Virginia's choice of law rules apply *lex loci delicti*—*i.e.*, the law of the place of the wrong. *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). The place of the wrong is "the place where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). "The last element of a tortious interference claim is damage to the plaintiff; [for] without damages, a defendant may not be held liable." *Palaxar Grp., LLC v. Williams*, No. 3:13-CV-641, 2014 WL 2002214, at *1 (E.D. Va. May 14, 2014) (applying Virginia law under Virginia's choice of law rules to tortious interference of economic relations claim because "Palaxar has alleged that its business expectancies were being negotiated from Virginia"); *cf. Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) ("For claims of tortious interference with contract . . . the occurrence of the plaintiff's injury marks the last event necessary to establish liability") (citing *Gen. Gen. Assur. of Am., Inc. v. Overby-Seawell Co.,* 533 F. App'x 200, 202 (4th Cir. 2013)).

Plaintiff and Defendant disagree as to which act was the last act necessary to impose injury, and thus disagree on which state's substantive law should govern. Defendant argues that for Plaintiff's tortious interference with contract claim regarding Plaintiff's Program Participation Agreement "PPA" with the Department of Education (Count III)… the last necessary act to cause legal injury was the Department of Education's decision to terminate IU's Title IV funding. Dkt. 15 at 19-20. Thus, Defendant claims, since those funds would have been directed to Utah, where

the campus is located, Utah law should apply. *Id.* Alternatively, Defendant argues that if "IU's breach of the PPA" was the last event necessary, meaning when IU's accreditation was withdrawn, "Utah law would still apply, because IU's breach occurred in Utah, where the campus is located, and where it would be expected to perform its obligation under the PPA to remain accredited." *Id.* at 25. For Plaintiff's claim for tortious interference with contract regarding student enrollment agreements (Count IV), Defendant argues the last event necessary would either be "IU's breach of the student enrollment agreements by failing to maintain its accreditation, or the students' no longer paying," which in either case happened at IU's campus location in Utah. *Id.* at 24. For Plaintiff's claim based on tortious interference with prospective business or economic advantage (Count V), Defendant argues that the same analysis applies to Count IV and Utah law governs. *Id.* at 30. Plaintiff contends that, while the effects of Defendant's tortious interference occurred in multiple jurisdictions,[3] the alleged "wrongful acts" themselves occurred exclusively in Virginia, so Virginia law should apply to each of the three tort claims. Dkt. 21 at 20. The last necessary act, according to Plaintiff, seems to be Defendant's decision to withdraw Plaintiff's accreditation. *See id.* at 15 ("Here, the 'wrongful acts' alleged by [Plaintiff] all occurred exclusively in Virginia and the effects of that conduct—interference with [Plaintiff]'s contracts and economic relationships with the Department of Education and its current and prospective students—occurred in multiple jurisdictions.")

The Court agrees with Plaintiff that resolving the Motion to Dismiss does not "turn on choice of law analysis." *Id.* at 14. Further, courts are generally in a better position to decide a

---

[3] Plaintiff argues that, at the time of Defendant's withdrawal decision, Plaintiff was operating colleges in California, teaching students in California, and IU enrolled online students from all over the country. Dkt. 21 at 15. Thus, Plaintiff argues that the enrollment agreements that Defendant interfered with touched multiple jurisdictions, not just Utah. Dkt. 21 at 15.

choice of law issue after discovery when the factual record is more developed. *See Anderson Gustafsson Advokatbyra, KB v. eSCRUB Sys. Inc.*, No. 1-10-CV-632, 2011 WL 677053, *2 (E.D. Va. Feb. 15, 2011) (finding that "the choice of law for tort and contract based claims should be determined with the benefit of a more complete record pending discovery"); *Arroyo v. Milton Acad.*, No. 5:10-CV-117, 2011 WL 65938, *3 (D. Vt. Jan. 10, 2011) (declining to conduct "choice-of-law analysis" in a tort case because "it would be premature to resolve these questions before the completion of discovery"); *Graboff v. The Collern Firm*, No. CIV.A. 10-1710, 2010 WL 4456923, *8 (E.D. Pa. Nov. 8, 2010) ("[C]onducting a . . . choice of law analysis is fact-intensive and context specific. Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings."). As such, the Court will not resolve the choice-of-law question at this stage of the proceedings. Nevertheless, for the purposes of deciding the Motion to Dismiss, there does not appear to be any material differences in Utah and Virginia law concerning the elements of the tort of intentional interference with contract or prospective economic relationship. The Court, therefore, can decide the Motion to Dismiss with respect to those claims without definitively deciding whether Utah or Virginia law applies.

### 3. Tortious Interference (Counts III-V)

To state a claim for tortious interference under Utah law, a plaintiff must plausibly allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (citation omitted). To state a claim for intentional interference under Virginia law, a plaintiff must allege (1) intentional and willful acts; (2) calculated to cause

14

damage to the plaintiffs' known and valid business relationship or expectancy and (3) actual damage and loss resulting. *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97, 102 (Va. 1985).

Defendant does not contest that Plaintiff plausibly alleged that the withdrawal decision was secured by improper means aimed at intentionally interfering with Plaintiff's contractual relations. Rather, Defendant argues that Plaintiff failed to plausibly allege causation under both Virginia and Utah law. Dkt. Nos. 15 at 20-26; 22 at 10. This Court's analysis will therefore focus solely on the element of causation for each count.

### a. Count III

Plaintiff alleges that Plaintiff had a contractual agreement entitled a PPA with the Department of Education regarding the institution's eligibility for Title IV programs, Dkt. 1 ¶ 86, and Defendant tortiously interfered with that contract with its April 22, 2021 withdrawal decision, *id.* ¶¶ 92-94. Defendant argues that Plaintiff failed to plausibly allege causation on the tortious interference claim with respect to the PPA, because IU voluntarily closed its doors before Defendant's withdrawal decision was final. Dkt. 15 at 20. As accreditation decisions are stayed pending appeal, Defendant argues that Plaintiff remained accredited up until it voluntarily closed its doors, which "undermines the element of causation in its claims for tortious interference." *Id.* at 22. Plaintiff responds that its allegations give rise to a plausible inference that Defendant's April 22, 2021 withdrawal decision caused Plaintiff's harm, even though it was not final, because it "immediately precipitated" the Department of Education's decision to cut Title IV funding. Dkt. 21 at 17. Plaintiff further claims the Department of Education's cessation of funding set off a chain of events that led to the closure of IU and the loss of current and future students. *Id.*

To allege causation, under both Utah and Virginia law, a plaintiff must plead that a defendant's actions "proximately" caused the end result. *Lockheed Info. Mgmt. Sys. Co. v.*

*Maximus, Inc.*, 524 S.E.2d 420, 432-33 (Va. 2000); *Francis v. Nat'l DME*, 350 P.3d 615, 628 (Utah Ct. App. 2015); *see also Burrage v. United States*, 571 U.S. 204, 210 (2014) (distinguishing between "actual cause" and "proximate cause"). Proximate cause is defined as "that cause which, in natural and continuous sequence (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred.'" *Francis*, 350 P.3d at 628 (internal citation omitted); *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009) (similar).

For the purposes of surviving a Rule 12(b)(6) motion to dismiss, Plaintiff has sufficiently alleged facts that make plausible each element of the tortious interference with contract claim (Count III). Plaintiff alleges that the PPA with the Department of Education required Plaintiff to "maintain continuous accreditation," Dkt. 1 ¶ 90, and that once the Department of Education received notice of the accreditation withdrawal decision, it immediately stopped IU's Title IV funding, *id.* ¶ 91. Construing these allegations in the light most favorable to Plaintiff, these facts give rise to a plausible inference that Defendant's withdrawal decision was the proximate cause of Plaintiff's harm.[4] The Court finds it plausible that, after learning that Defendant decided to withdraw IU's accreditation, a condition required for funding under the terms of the PPA, that the Department of Education would cease to provide federal funds in response. Defendant counters that its April 22, 2021 withdrawal decision could not be the cause of Plaintiff's harms for two reasons: (1) the April 22, 2021 decision was not final, so it did not become effective until the

---

[4] In its Opposition, Plaintiff alleges that the Department of Education represented in a letter to Plaintiff that it ceased providing Title IV funds to Plaintiff specifically because of Defendant's withdrawal decision. Dkt. 21 at 17 n.5. However, a party cannot amend their complaint through the pleadings, so the Court will not consider this allegation as part of its analysis. *Weakley v. Homeland Security Solutions, Inc.*, 2015 WL 11112158, at *5 (E.D. Va. May 19, 2015) (noting that it is "axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss")

Appeal's Panel affirmed the decision in September and (2) IU closed its doors in August before the final withdrawal decision was issued. Dkt. 15 at 20.

This Court is not persuaded by Defendant's arguments that its April 22, 2021 withdrawal decision could not be the proximate cause of Plaintiff's harm. First, accreditation decisions do not need to be final to give rise to a plausible claim of tortious interference. *Career Care Inst., Inc.*, 2009 WL 742532, at *8. In *Career Care*, the accreditor argued that the plaintiff institution could not have been harmed by the accreditor's withdrawal decision, because the decision was not final, and therefore there was no actual disruption in accreditation. *Id.* at *8. However, the court determined that "tortious interference with contract claims do not require that [an accreditor] actually enforce its decision to terminate or withdraw [] accreditation or that plaintiff allege an actual disruption of accreditation." *Id.* The court found it sufficient that the school alleged that the withdrawal decision interfered with its contractual and economic relationships with the Department of Education and its students, even though the withdrawal decision had not yet been enforced. *Id.* Similarly, in the instant case, Plaintiff alleges that the withdrawal decision interfered with its contractual relationship under the PPA, Dkt. 1 ¶ 91, and with its contractual and economic relationships with its current students and future students, *id.* ¶¶ 102, 107, 109. Defendant does not cite any case law in this Circuit holding that an accreditation decision must be final to cause harm.

Defendant's reliance on *William Loveland Coll.*, is also unavailing. Although the court in *William Loveland Coll.* found that the accreditor's actions did not cause any of the school's alleged harms, that case is readily distinguishable. 347 F. Supp. 3d. at 6. First, the school in *William Loveland Coll.* received a "show cause directive" ordering the school to show cause why accreditation should not be withdrawn. *William Loveland Coll.*, 347 F. Supp. 3d. at 8. Rather than

17

complying with the process to show cause, the school withdrew from the process, causing its accreditation to lapse. *Id.* at 10. Thus, the accreditors never had the opportunity to make any decision with respect to the Show Cause directive and the accreditation lapsed due to the school's inaction. *Id.* at 22. Here, Plaintiff alleges, and Defendant does not dispute, that IU closed only after Defendant issued the initial withdrawal decision on April 22, 2021. Dkt. Nos. 1 ¶ 91; 15 at 20-21. Unlike the plaintiff in *William Loveland Coll.*, Plaintiff, here, has alleged that there was a withdrawal decision by an accreditor and that that decision caused the Department of Education to cut Plaintiff's funding, resulting in substantial harm to Plaintiff. Ultimately in *William Loveland Coll.*, the accreditors never made a decision due to the plaintiff's inaction, so the court found that there was no action on behalf of the accreditors that could have caused harm. *William Loveland Coll.*, 347 F. Supp. 3d. at 22. Here, however, Plaintiff has alleged that its accreditation did not lapse due to its own inaction, but rather because the accreditation was withdrawn by a decision by the Defendant, thus making *William Loveland Coll.,* inapposite. *Id.* Alternatively, Defendant argues that, even if Defendant's April 22, 2021 decision contributed to Plaintiff's harm, the Department of Education's actions to withdraw funding were a premature intervening cause that was not foreseeable as part of the accreditation appeals process. Dkt. 22 at 11. The Court disagrees. It is foreseeable that, even though a withdrawal decision may not be technically final, the Department of Education may withdraw funding from those schools that require accreditation as a condition to receive said funding, even before the appeals process is complete. *Career Care Inst., Inc.*, 2009 WL 742532, at *8; *Hampton Univ. v. Accreditation Council for Pharm. Educ.* 611 F. Supp. 2d 557, 567 (E.D. Va. 2009). Thus, the Court finds that Plaintiff has adequately alleged that Defendant's withdrawal decision was the proximate cause of Plaintiff's harm with regard to Count III. Thus, the Motion to Dismiss will also be denied with respect to Count III.

b. Counts IV-V

Plaintiff has also alleged sufficient facts to survive a motion to dismiss on Counts IV and V. Plaintiff alleges that as a direct cause of Defendant's April 22, 2021 withdrawal decision, Plaintiff lost all current and future enrollments, Dkt. 1 ¶ 1. To support this allegation, Plaintiff contends that, since nearly every college student relies on federal assistance, it is plausible that loss of that funding would dissuade current and potential students from enrollment. Dkt. 21 at 18. Though Defendant argues that Plaintiff's claims that Defendant's April 22, 2021 decision caused existing students to withdraw and prospective students to refrain from matriculating, are "unsupported and speculative," courts have found that even a mere threat of withdrawal can affect current and future enrollment. *See Hampton Univ.,* 611 F. Supp. 2d at 567 (finding the school's probationary accreditation status "undoubtably" had an adverse impact on current and former students likely leading current students to consider transferring to other schools and prospective students choosing other schools); *see also Mountain State Univ., Inc.*, 2017 WL 963043, at *1 (noting "loss of accreditation may end the institution's very existence for all intents and purposes since, . . . 'the vast majority of its students rely upon state and federal financial aid to finance their education.'") (internal citations omitted). Therefore, it would be reasonably foreseeable that Defendant's accreditation withdrawal decision could plausibly lead to IU's closure. The mere existence of an appeals process should not shield Defendant from all potential liability for any harm allegedly caused by an accreditor's initial decision to withdraw accreditation. Thus, the Court finds that Plaintiff has sufficiently pleaded a claim in Counts IV and V of the Complaint and the Motion to Dismiss will be denied with respect to those counts.

\* \* \*

In sum, the declaratory judgment claim in Count II will be dismissed as duplicative of Plaintiff's due process claim in Count I. However, the Court finds that Plaintiff has pleaded sufficient facts to support his tortious interference claims (Counts III-V) based on the April 22, 2021 withdrawal decision. Thus, the Motion to Dismiss will be denied with respect to those counts. Whether the tortious interference claims can actually be proven must await a more complete record either on summary judgment or at trial.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 14) is GRANTED-IN-PART and DENIED-IN- PART; and it is

FURTHER ORDERED that Count II is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that the Motion is DENIED as to Counts III-V.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
September 26, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge