IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:22-cv-1223 (RDA/WEF) |
| ACCREDITATION ALLIANCE OF CAREER SCHOOLS AND COLLEGES, D/B/A ACCREDITING COMMISSION OF CAREER SCHOOLS AND COLLEGES, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Accrediting Commission of Career Schools and Colleges' ("ACCSC" or "Defendant") Motion for Judgment on the Pleadings ("Motion"). Dkt. 37. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Complaint (Dkt. 1), Defendant's Answer (Dkt. 28), Defendant's Memorandum in Support of its Motion (Dkt. 38), Plaintiff Center for Excellence in Higher Education, Inc.'s ("CEHE" or "Plaintiff") Response in Opposition (Dkt. 39), and Defendant's Reply (Dkt. 47), the Court will GRANT the Motion for the reasons that follow.[1]

---

[1] Plaintiff's Objection to Magistrate Judge's Order on Defendant's Motion for Protective Order is also pending. Dkt. 68. Given that the Court will grant Defendant's Motion for Judgment on the Pleadings, Plaintiff's Objection will be dismissed as moot.

# I. BACKGROUND

## A. Factual Background

Given the issues raised by the pending Motion, a review of the statutory framework in addition to the facts alleged in the Complaint is helpful here.

### 1. Accreditation Procedures

An institution must be accredited to participate in federal assistance programs authorized under Title IV of the Higher Education Act ("HEA").  Dkt. 1 ¶ 15.  The federal government does not directly accredit institutions of higher learning but rather delegates that authority to various federally approved accrediting agencies for different types of educational institutions.  *Id.* ¶ 15; *Career Care Inst., Inc. v. Accrediting Bureau of Health Educ. Sch., Inc.*, 2009 WL 742532, at *1 (E.D. Va. Mar. 18, 2009).  Accreditors set standards for accreditation but must comply with various other standards set forth by the HEA and the Department of Education.  *Id.* ¶¶ 16-17; *Career Care Inst.,* 2009 WL 742532, at *1.  In particular,

> accrediting agencies must afford certain due process protections to each educational institution it accredits which include, among other things, providing written statements of agency requirements and standards, written notice of any "adverse accrediting action or action to place the institution or program on probation or show cause," and an opportunity to appeal any adverse action prior to the action becoming final.  20 U.S.C. § 1099b(a)(6); 34 C.F.R. § 602.25.

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 7 (D.D.C. 2018), *aff'd sub nom.* 788 F. App'x 5 (D.C. Cir. 2019); Dkt. Nos. 1 ¶ 21; 15 at 16.  If the accreditor's internal Appeals Panel affirms the initial decision, the decision is final, and the institution's only recourse is binding arbitration.  Dkt. 1 ¶ 25.

### 2. Withdrawal of Plaintiff's Accreditation

Plaintiff CEHE owns and operates four institutions of higher education.  *Id.* ¶ 7. Independence University ("IU"), an online school, was the only one of Plaintiff's four institutions

that was enrolling students at the time of the withdrawal of accreditation.  *Id.* ¶ 8.  Defendant ACCSC is a federally recognized accrediting agency that was responsible for approving IU's accreditation.  *Id.* ¶ 15.  Defendant's *Standards for Accreditation* (the "*Standards*") lay out the requirements that institutions must maintain to receive accreditation.  *Id.* ¶ 4.

In September of 2018, Defendant determined that IU was out of compliance with the student achievement *Standards* because of its low graduation and post-graduate employment rates. *Id.* ¶ 32.  Accordingly, Defendant placed IU on probation.  *Id.*  Defendant allows an institution a maximum of three years to remedy noncompliance with any *Standard*; however, Defendant may extend that maximum timeframe if good cause exists.  *Id.* ¶ 30.

Following IU's placement on probation status, Plaintiff spent roughly $10 million on initiatives that it anticipated would improve student achievement.  *Id.* ¶ 35.  During this two-year probationary period, Plaintiff consistently updated Defendant on its initiatives and Defendant commended those efforts.  *Id.*

On July 21, 2020, Defendant issued a continued probation letter that recognized Plaintiff's progress in improving student achievement and announced that good cause existed to extend IU's accreditation until at least May 2021.  *Id.* ¶ 35.  In this letter, Defendant also acknowledged that IU's programs could not report benchmark graduation rates for several years because the school primarily offers 20- to 36-month degree programs.  *Id.* ¶¶ 31, 35.  Defendant further stated that it would measure progress on the success of recently enrolled students, since they are the students that would be affected by Plaintiff's new initiatives.  *Id.*

On August 21, 2020, a Colorado state court ruled that Plaintiff's use of Bureau of Labor Statistics ("BLS") salary and job outlook information advertisements for another of Plaintiff's institutions, CollegeAmerica (which had been approved by Defendant), violated state consumer

3

protection laws. *Id.* ¶ 5. A few months after that ruling, Defendant's own application seeking continued federal recognition was up for review by the Department of Education. *Id.* According to Plaintiff, "[u]pon information and belief," the Colorado state court ruling is the event that triggered a change in Defendant's treatment of IU because the ruling was allegedly "deeply embarrassing" to Defendant and Defendant needed to "deflect scrutiny and damaging criticism." *Id.*

On December 20, 2020, Plaintiff sent Defendant a follow-up letter which contained updated projections for IU's recently enrolled students showing that all programs were on track to meet or exceed benchmark rates. *Id.* ¶ 36. During a meeting in February 2021, Defendant withdrew IU's accreditation before IU's probation was set to end in May. *Id.* ¶ 37. The withdrawal caused: (i) Plaintiff to lose access to critical Title IV funding; (ii) Plaintiff to lose the ability to continue enrolling students; (iii) the closure of Plaintiff's schools. *Id.* ¶ 1. Defendant published the decision to withdraw IU's accreditation on April 22, 2021, and stated that Defendant based the decision on the graduation rates of old students, not new students. *Id.* ¶ 37. This decision was also announced around the time that Defendant stated that it would ease its strict enforcement of the student achievement *Standards* due to the Covid-19 pandemic. *Id.* ¶ 43.

On April 30, 2021, Plaintiff sent a letter to Defendant's Executive Director, Dr. Michale McComis, notifying him that publicly available information alerted them to Defendant's alleged unfair treatment of IU in comparison to other member institutions. *Id.* ¶ 51. Plaintiff then turned to Defendant's internal Appeals Panel, which is required to overturn any decision that is arbitrary and capricious according to Defendant's *Rules of Process and Procedure*. *Id.* ¶ 52. Plaintiff requested the records of Defendant's treatment of other member institutions, particularly regarding any leniency given to those schools because the schools were online or because of the pandemic.

*Id.* ¶ 51. Dr. McComis denied Plaintiff's record requests, which, according to Plaintiff, meant that the evidence of disparate treatment and bad faith were not considered in Defendant's internal appeals process. *Id.* ¶¶ 53, 6. The Appeals Panel ultimately upheld Defendant's accreditation withdrawal decision with respect to IU. *Id.* ¶ 59.

Plaintiff then initiated arbitration, which was conducted pursuant to Defendant's *Instructions for Arbitration*. *Id.* ¶¶ 25-26, 60; Dkt. 1-5 at 1, 5; Dkt. 1-4. In applying for accreditation with Defendant, applicant schools, including IU, agree "to submit fully and faithfully to final, binding arbitration proceedings" that are governed by Defendant's *Instructions for Arbitration*. Dkt. 1-4 at 2; Dkt. 1-5 at 5 (explaining that, [a]s a member of the AACSC seeking accreditation, IU has agreed . . . to adhere [to] the AACSC Bylaws. Pursuant to Section 4.06 of the AACSC Bylaws, IU has agreed, by applying for accreditation . . . to submit any claim against the Commission relating to accreditation to final and binding arbitration as set forth in" Defendant's *Standards*, which include the *Instructions for Arbitration* in an appendix); Dkt. 28 at 14. The *Instructions for Arbitration* provide that

> (1) The arbitration proceeding is not a *de novo* review. It is a review on the record and is limited to the question of whether the Appeals Panel's decision is supported by the evidence that was in the record when the Panel rendered its decision.
>
> (2) The arbiter may not consider evidence that was not in the record before the Appeals Panel.

Dkt. 1-4 at 2. The *Instructions for Arbitration* further provide that discovery is not available during the arbitration process. *Id.* at 4 ("Depositions, interrogatories, requests for admission, and other forms of adversarial discovery shall not be used during the arbitration proceeding.").

At the outset of arbitration proceedings, Defendant provided the arbitrator with Arbitration Exhibits, which consisted solely of the record before the Appeals Panel. Dkt. 1 ¶ 60. Plaintiff subsequently filed a Motion to Supplement the Arbitration Exhibits, seeking to have the arbitrator

order Defendant to produce documents and records related to Defendant's treatment of other similarly situated schools. *Id.* ¶¶ 26; 61. Plaintiff also sought discovery, "in the form of interrogatories, document requests and depositions, in order to investigate what it contends was bad faith on the part of ASCCS." Dkt. 1-5 at 4; Dkt. 1 ¶ 61. The arbitrator concluded that he was "constrained by the parties' arbitration agreement – as embodied in the Instructions for Arbitration – to decline [Plaintiff's] requests that [Defendant] be ordered to produce documents that were not in the record before the Appeals Panel or that discovery be permitted in arbitration." Dkt. 1-5 at 7-8; Dkt. 1 ¶ 26. Consequently, based on a review of the record before the Appeals Panel, the arbitrator entered an award in favor of Defendant. *Id.* ¶ 63.

### B. Procedural Background

Plaintiff initiated suit in this Court by filing a Motion to Vacate Arbitration Award and Complaint on October 28, 2022. Dkt. 1. In turn, Defendant filed a Partial Motion to Dismiss along with a Memorandum in Support on December 22, 2022. Dkts. 14; 15. In the Memorandum in Support, Defendant asserted that Count II's request for declaratory relief was duplicative of Count I's due-process claim. Dkt. 15 at 6-7. As to Plaintiff's state-law claims (Counts III-V), Defendant argued that (1) they were preempted by the HEA, *id.* at 7, and (2) that Plaintiff failed to allege facts sufficient to establish causation for each claim, *id.* at 18-26. Plaintiff filed an Opposition on January 26, 2023. Dkt. 21. Thereafter, Defendant filed a Reply on February 9, 2023. Dkt. 22. On September 26, 2023, this Court granted-in-part and denied-in-part the partial motion to dismiss, dismissing Count II for duplicity but denying the motion in all other respects. Dkt. 25 at 20.

After receiving an extension from Magistrate Judge William E. Fitzpatrick on October 16, 2023, Dkt. 27, Defendant filed its Answer and Response to Plaintiff's Motion to Vacate Arbitration on October 20, 2023, Dkt. 28. On April 1, 2024, a scheduling order issued setting the close of

discovery for August 23, 2024.  Dkt. 29 at 1.  On April 24, 2024, Defendant moved to suspend discovery until after the resolution of its forthcoming motion for judgment on the pleadings.  Dkt. 31.  Plaintiff filed an Opposition to Defendant's Motion to Suspend Discovery on May 8, 2024, Dkt. 35, and Defendant filed a Reply on May 14, 2024, Dkt. 36.  On May 16, 2024, Defendant filed its Motion for Judgment on the Pleadings.  Dkt. 37.  Plaintiff filed an Opposition to the Motion for Judgment on the Pleadings on May 30, 2024.  Dkt. 39.  On June 5, 2025, Defendant filed its Reply, Dkt. 47, and Judge Fitzpatrick denied Defendant's Motion to Suspend Discovery, Dkts. 48; 49.

On September 20, 2024, Defendant filed a Motion for Protective Order requesting that the Court limit the scope of discovery.  Dkt. 58 at 15-16.  Plaintiff filed an Opposition on September 25, 2024, Dkt. 63, and Defendant filed a Reply on September 26, 2024, Dkt. 64.  After a hearing, Judge Fitzpatrick granted Defendant's Motion for Protective Order on September 27, 2024.  Dkts. 66; 67.  On October 11, 2024, Plaintiff filed an Objection to Magistrate Judge Fitzpatrick's ruling on Defendant's Motion for Protective Order.  Dkt. 68.  Defendant filed an Opposition on October 25, 2024, Dkt. 74, and Plaintiff filed a Reply on October 31, 2024, Dkt. 76.

This Court now considers Defendant's Motion for Judgment on the Pleadings, along with the parties' additional briefing on the issues raised therein.

## II. Standard of Review

From the outset, it is important to note that the disposition of this Motion implicates Rule 12(c) of the Federal Rules of Civil Procedure, and not Rule 12(b)(6).  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Nonetheless, the standard of review for Rule 12(c) motions is the same "plausibility standard" that governs Rule 12(b)(6) motions.  *Drager v. PLIVA USA, Inc.*, 741

F.3d 470, 474 (4th Cir. 2014); *Travelers Indem. Co. of Connecticut v. Lessard Design, Inc.*, 321 F. Supp. 3d 631, 635 (E.D. Va. 2018).  "A Rule 12(c) motion for judgment on the pleadings is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain." *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213, 216 (E.D. Va. 2011) (quoting *Republic Ins. Co. v. Culberton,* 717 F. Supp. 415, 418 (E.D. Va. 1989)), *aff'd,* 494 F. App'x 394 (4th Cir. 2012).  A motion for judgment on the pleadings challenges a claim's sufficiency; "it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Thus, "judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief[.]" *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

### III. Analysis

In its Motion to Vacate Arbitration Award and Complaint, Plaintiff seeks an order vacating the August 4, 2022 arbitration award that was entered in favor of Defendant.  Plaintiff also brings four claims against Defendant: a violation of due process claim (Count I), two tortious interference with contract claims (Count III and IV), and a tortious interference with prospective business or economic advantage claim (Count V).  Dkt. 1 at 24-30.  In its Motion for Judgment on the Pleadings, Defendant seeks denial of the Motion to Vacate and dismissal of the remaining counts.  Dkt. 38 at 15, 22.  In Opposition, Plaintiff asserts that the remaining counts survive regardless of the outcome of the Motion to Vacate and that Defendant's Motion is untimely.  Dkt. 39 at 11; 17.  The Court will first address the timeliness of Defendant's Motion before addressing each of Defendant's arguments in turn.

A. Defendant's Motion for Judgment on the Pleadings is Timely

As a threshold matter, Defendant's Motion is timely. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Plaintiff argues that Defendant's Motion is not timely, noting that Defendant filed its Answer on October 23, 2023, but did not file its Motion for Judgment on the Pleadings until May 16, 2024, "without any explanation for the nearly seven-month delay." Dkt. 39 at 17. In response, Defendant asserts that a motion for judgment on the pleadings can be filed at any time after pleadings close, as long as the motion does not delay trial. Dkt. 47 at 2. Defendant further argues that, since no trial has been scheduled yet, its Motion is timely. *Id.*

The Court finds that the Motion is timely. Defendant filed its Motion on May 16, 2024, Dkt. 37, which is approximately three months before the scheduled close of discovery on August 23, 2024, Dkts. 29 at 1; 50 at 1. Additionally, as Defendant notes, no trial had been scheduled when it filed its Motion. Therefore, Defendant filed its Motion within the acceptable time frame— after pleadings closed, but early enough not to delay trial. *C.F. Biniaris v. Hansel Union Consulting, PLLC*, 382 F. Supp. 3d 467, 471 (E.D. Va. 2019) (questioning timeliness of defendant's motion for judgment on the pleadings that was filed on April 17, 2019, when trial was scheduled to begin on August 20, 2019, but nevertheless reaching the merits of the motion). Defendant's Motion for Judgment on the Pleadings is thus timely.

B. Plaintiff's Motion to Vacate Will be Denied

In its Motion for Judgment on the Pleadings, Defendant first argues that Plaintiff's Motion to Vacate should be denied. Dkt. 38 at 15-22. Plaintiff initiated this action to vacate the August 4, 2022 arbitration award entered in favor of Defendant. Dkt. 1 at 1. Plaintiff asserts that the Court

must vacate the award under Section 10(a)(3) of the Federal Arbitration Act ("FAA"). *Id.* ¶ 2.; *id.* at 31.  Under the FAA, federal courts may vacate an arbitration award only upon a showing of one of the specified grounds:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy . . .; or (4) where the arbitrators exceeded their powers . . . .

9 U.S.C. § 10(a); *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998).  Relying primarily on the third ground, Plaintiff states that the Award should be vacated because the arbitrator "refused to hear pertinent and material evidence."[2]  Dkt. 1 ¶ 66.  Specifically, Plaintiff claims that the arbitrator engaged in misconduct by denying Plaintiff's Motion to Supplement Arbitration Exhibits and by declining to review evidence related to Defendant's more favorable treatment of similarly situated schools or to allow limited discovery to investigate Defendant's true motives for withdrawing IU's accreditation.  *Id.* ¶¶ 67, 70, 73.  Plaintiff contends that in "refusing to allow any extra-record evidence or discovery regardless of the strength of CEHE's showing of improper conduct and bad faith, the arbitrator denied CEHE 'an adequate opportunity to present its evidence and arguments.'"  Dkt. at 3 (quoting *Int'l Union, UMW v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000)).  Conversely, Defendant argues that the Motion to Vacate should be denied because the scope of the arbitration proceedings, as defined by the *Instructions for Arbitration*, limited the arbitrator's authority to considering only evidence in the record before the Appeals Panel.  Dkt. 38 at 17.

---

[2] Although Plaintiff also alleges that the arbitrator "exceeded its powers," Plaintiff fails to provide specific details to support this claim.  Dkt. 1 ¶ 66.  It therefore appears that Plaintiff's Motion to Vacate is based solely on the third ground—that the arbitrator refused to hear pertinent and material evidence.

As courts recognize, "[a]rbitration is fundamentally a creature of contract," where the "arbitration will be governed by procedures specifically tailored to the context from which the agreement to arbitrate arises." *Pearce v. E.F. Hutton Grp., Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987). "[T]he scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'" *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Apex Plumbing Supply*, 142 F.3d at 193). When reviewing arbitration awards, "a district or appellate court is limited to determining whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted). The party seeking to vacate an arbitration award carries a "heavy burden" in demonstrating that one of the grounds specified in the FAA has been met. *DataQuick*, 492 F.3d at 527.

Plaintiff has failed to meet this burden because the arbitrator did not commit misconduct in declining to consider evidence of Defendant's treatment of similarly situated schools or in declining to order limited discovery. Rather, the arbitrator acted within the scope of his authority prescribed by the arbitration agreement between the parties. The arbitration was governed by Defendant's *Instructions for Arbitration*, which Plaintiff agreed to abide by when it applied for accreditation with Defendant. Dkt. 1-5 at 1, 5. The *Instructions for Arbitration* specifically provide that arbitration "is *not* a *de novo* review" and, importantly, that the arbitrator "*may not* consider evidence that was not in the record before the Appeals Panel." Dkt. 1-4 at 2. Even more particularly, the *Instructions for Arbitration* provide that "[d]epositions, interrogatories, requests

for admission, and other forms of adversarial discovery shall not be used during the arbitration proceeding." *Id.* at 4. Arbitration is a creature of contract and, here, the contract bound the arbitrator to review only the evidence that was part of the record before the Appeals Panel. As such, the arbitrator properly denied Plaintiff's requests to require Defendant to produce additional documents and records related to other schools or to permit discovery beyond the existing record. As Defendant notes, given the clear and binding *Instructions for Arbitration*, "the only pertinent and material evidence was that in the record." Dkt. 38 at 17. Upon review of that record, the arbitrator determined that the Appeals Panel's decision was supported by the evidence.

Plaintiff does not dispute that these are the provisions by which Plaintiff, in applying for accreditation, agreed to be governed. Dkt. 39 at 13 (conceding "as a technical matter, the arbitrator followed ACCSC's procedurally deficient Instructions"). Rather, Plaintiff argues that the *Instructions* "denied CEHE the required full and fair opportunity for review of the withdrawal decision." *Id.* at 1. Accordingly, based on Plaintiff's own allegations and argument, Plaintiff has failed to provide a sufficient basis to vacate the arbitration award under Section 10 of the FAA because the arbitrator did not commit misconduct by denying Plaintiff's Motion to Supplement Arbitration Exhibits. As a result, Defendant's Motion for Judgment on the Pleadings will be granted as to Plaintiff's Motion to Vacate, and the Motion to Vacate will be denied.

## B. Remaining Counts

Next, Defendant asks this Court to dismiss the remaining Counts of the Complaint because "they represent an impermissible collateral attack on the final arbitration award and because they rely on a violation of due process that [Plaintiff] cannot establish." Dkt. 38 at 22. In Opposition, Plaintiff asserts that it can bring claims that it did not assert in arbitration "if a withdrawal decision was based on agency bias or bad faith." Dkt. 39 at 13-14 (citing *Pro. Massage Training Ctr., Inc.*

*v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 181-82 (4th Cir. 2015) ("*Professional Massage*")).  Plaintiff alleges that Defendant treated other member institutions, who were in worse or similar conditions to IU, more leniently.  Dkt. 1 ¶ 51.  Plaintiff further argues that Defendant withdrew Plaintiff's accreditation in bad faith because it singled out Plaintiff to deflect unrelated public scrutiny; that this claim was not litigated before the arbitrator; and that Plaintiff is therefore entitled to its day in court regarding the remaining claims based on the alleged bad faith.  Dkt. 39 at 11-14.  The Court will first address Defendant's collateral attack argument.

Under Section 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in Sections 10 and 11.  Section 10 lists grounds for vacating an award, while Section 11 names those for modifying or correcting one."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, at 583 (2008); 9 U.S.C. §§ 9-11.  An arbitration award is therefore binding unless the parties challenge the validity of the underlying arbitration agreement under Section 2 of the FAA or seek review of the arbitration award to "address egregious departures from the parties' agreed-upon arbitration" under Sections 10 and 11.  *Hall St.*, 552 U.S. at 586; *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1212 (6th Cir. 1982) ("Once an arbitrator has rendered a decision the award is binding on the parties unless they challenge the underlying contract to arbitrate pursuant to section 2 or avail themselves of the review provisions of sections 10 and 11.").  As such, courts have ruled that claims that require a court to review an arbitration award outside of the framework prescribed in Sections 10 and 11 of the FAA are generally impermissible, as they constitute collateral attacks on the award.  *See Texas Brine Co. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("The Supreme Court has held that the statutory bases for vacating an arbitrator's award are the only grounds on which a court may vacate an award . . . purportedly independent claims are not a basis for a challenge if they are disguised

collateral attacks on the arbitration award"); *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906 (6th Cir. 2000) (explaining that "where a party files a complaint in federal court seeking damages for an alleged wrongdoing that compromised an arbitration award and caused the party injury, it 'is no more, in substance, than an impermissible collateral attack on the award itself'"); *Corey*, 691 F.2d at 1211-12; *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986); *Fakhri v. Marriot Int'l Hotels, Inc.*, 201 F. Supp. 3d 696, 712 (D. Md. 2016).

Plaintiff's claims here are an impermissible collateral attack against the arbitration award. In addition to the Motion to Vacate based on Section 10 of the FAA that this Court found insufficient in the previous section, Plaintiff asserts four remaining claims: a violation of due process claim (Count I), two tortious interference with contract claims (Count III and IV), and a tortious interference with prospective business or economic advantage claim (Count V). Dkt. 1 at 24-30. Although Plaintiff challenges the *Instructions for Arbitration*, Plaintiff does not argue that the underlying agreement between the parties, including the agreement to arbitrate, is void or invalid. Instead, Plaintiff's challenge appears to be buyer's remorse regarding the restrictions in arbitration to which it agreed to abide when it applied for accreditation.[3] Plaintiff has therefore

---

[3] In applying for accreditation with Defendant, applicant schools, including IU, agree "to submit fully and faithfully to final, binding arbitration proceedings" that are governed by Defendant's *Instructions for Arbitration*. Dkt. 1-4 at 2; Dkt. 1-5 at 5 (explaining that, "[a]s a member of the AACSC seeking accreditation, IU has agreed, among other things, to adhere [to] the AACSC Bylaws. Pursuant to Section 4.06 of the AACSC Bylaws, IU has agreed, by applying for accreditation . . . to submit any claim against the Commission relating to accreditation to final and binding arbitration as set forth in" Defendant's *Standards*, which include the *Instructions for Arbitration* in an appendix); Dkt. 28 at 14. Moreover, the HEA requires initial arbitration of disputes involving accreditation status of institutions of higher education. *See* 20 U.S.C. § 1099b(e) ("The Secretary may not recognize the accreditation of any institution of higher education unless the institution of higher education agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action."). As such, in applying for accreditation with Defendant, Plaintiff agreed to submit disputes involving the withdrawal of accreditation to arbitration and agreed to adhere to Defendant's *Instructions for Arbitration*.

14

not sought to challenge the underlying arbitration agreement under Section 2 of the FAA. Nor has Plaintiff sought relief under Section 11 or, as discussed in the previous section, provided sufficient basis to vacate the arbitration award under Section 10 of the FAA. "Barring these . . . situations, the [FAA] provides no other avenue by which an arbitration award may be challenged." *Corey*, 691 F.2d at 1212-13 (explaining that a defendant "may not transform what would ordinarily constitute an impermissible collateral attack into a proper independent direct action by . . . altering the relief sought"); *see also Hall St.*, 552 U.S. at 584 ("hold[ing] that [Sections] 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification"). As Defendant notes, a dispositive issue in each of Plaintiff's claims is whether Defendant afforded Plaintiff due process in withdrawing its accreditation and in the appeal and arbitration process. Dkt. 38 at 24. Ruling in Plaintiff's favor on these claims would effectively nullify the arbitration award in a manner that is unsupported by the FAA and thwart "the strong federal policy in favor of enforcing arbitration agreements."[4] *Decker*, 205 F.3d at 910. Because Plaintiff has not adequately pursued any of the pathways provided by the FAA to challenge the arbitration award,

---

[4] Plaintiff argues that *Professional Massage* allows it to bring its claims regarding Defendant's alleged bad faith, which it was unable to raise during arbitration due to the binding *Instructions for Arbitration* that limited the arbitrator's review of Defendant's withdrawal decision. While the *Professional Massage* Court briefly acknowledges that "[a] federal court may be justified in conducting a more searching inquiry into the motivations of administrative decisionmakers in the case of 'a strong showing of bad faith or improper behavior,'" 781 F.3d at 177-78, it ultimately reversed the district court, which "greatly expanded the administrative record, held a full multi-day bench trial, received depositions and live testimony in a way that sought to make itself the primary investigator and finder of fact," *id.* at 172. Moreover, *Professional Massage* did not involve a challenge to an arbitration award. As discussed, arbitration awards can only be challenged through the pathways prescribed by the FAA, none of which Plaintiff has adequately pursued here.

its remaining claims constitute an impermissible collateral attack on the award and will be dismissed.[5]

## IV. Conclusion

In sum, Plaintiff has failed to provide a sufficient basis to vacate the arbitration award under Section 10 of the FAA, and Counts I, III, IV, and V constitute an impermissible collateral attack on the arbitration award. Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for Judgment on the Pleadings (Dkt. 37) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion to Vacate is DENIED; and it is

FURTHER ORDERED that Plaintiff's Objection to Magistrate Judge's Order on Defendant's Motion for Protective Order (Dkt. 68) is DISMISSED AS MOOT.

The Clerk is directed to enter final judgment in favor of Defendant and against Plaintiff on Counts I, III, IV, and V; to forward copies of this Memorandum Opinion and Order to counsel of record; and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 6, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[5] Given that the Court finds that Counts I and III-V represent a collateral attack on the arbitration award, the Court need not assess Defendant's Due Process argument which addresses the merits of Plaintiff's claims.